24-MJ-4483-DHH

# AFFIDAVIT IN SUPPORT OF AN APPLICATION
# FOR A CRIMINAL COMPLAINT

I, Jason D. Costello, being duly sworn, state as follows:

## INTRODUCTION

1. I am a Special Agent of the Federal Bureau of Investigation (FBI) and have been so employed since July 2004. I am assigned to the FBI's Boston Field Office. Since November 2020, I have served in the role of Airport Liaison Agent Coordinator at Boston Logan International Airport, where I investigate violations of federal law in the airport environment and on board aircraft. In my capacity as an Airport Liaison Agent, I work with other law enforcement agencies at Boston Logan International Airport, including United States Customs and Border Protection (CBP) and the Massachusetts State Police (MSP). I have received training in the investigation of sexual assault and related crimes from both the United States Department of Justice and Municipal Police Training Committee in the Commonwealth of Massachusetts.

2. I make this affidavit in support of a criminal complaint charging Krishna KUNAPULI ("KUNAPULI"), YOB 1985, with violating Title 49, United States Code, Section 45606(2) (application of certain criminal laws to acts on aircraft) by committing a violation of District of Columbia (D.C.) Code Section 22-1312[1] (lewd, indecent, or obscene acts) on an aircraft in flight that was located outside the United States at the time, but was destined for, and in fact landed in, Boston on October 21, 2024.

3. The information in this affidavit is based upon my training and experience, my

---

[1] D.C. Code § 22-1312 was previously codified as D.C. Code § 22-1112, the statute referenced in 49 U.S.C. § 45606(2).

personal knowledge of this investigation, and information provided to me by law enforcement officers who have assisted in this investigation and have experience investigating criminal matters. In submitting this affidavit, I have not included each and every fact known to me about the investigation, but instead have included only those facts which I believe are sufficient to establish the requisite probable cause.

**RELEVANT STATUTES**

4. I am aware that, under Title 49, United States Code, Section 46501(2)(D), Special Aircraft Jurisdiction of the United States applies to any aircraft in flight located outside of the United States, if that aircraft has its next scheduled destination or last place of departure in the United States, and if the aircraft next lands in the United States. An "aircraft in flight" is defined in Section 46501(1)(A) of that title, as relevant here, as "an aircraft from the moment all external doors are closed following boarding through the moment when one external door is opened to allow passengers to leave the aircraft."

5. Title 49, United States Code, Section 46506(2) states, in pertinent part, "[a]n individual on an aircraft in the special aircraft jurisdiction of the United States who commits an act that … if committed in the District of Columbia would violate section 9 of the Act of July 29, 1892 (D.C. Code Section 22-1112), shall be fined under Title 18, imprisoned under section 9 of the Act, or both."

6. I am also aware that District of Columbia Code Section 22-1312, which was previously codified at Section 22-1112, makes it unlawful for "a person, in public, to make an obscene or indecent exposure of his or her genitalia or anus, to engage in masturbation, or to engage in a sexual act as defined in Section 22-3001(8)." I am also aware that violation of this section is a misdemeanor punishable by imprisonment up to 90 days. *Id.*

2

7.     I am also aware that, pursuant to Title 18, United States Code, Section 3238, venue for offenses begun or committed outside of any district of the United States is proper in the district in which the offender is arrested or first brought.

## PROBABLE CAUSE

8.     On October 21, 2024, while onboard Etihad Airlines Flight 7 ("EY7") on its scheduled route from Abu Dhabi, United Arab Emirates, to Boston, Massachusetts, KUNAPULI first made unwanted sexual advances towards an adult female passenger. Following this, KUNAPULI then masturbated and exposed his penis within view of at least two fellow adult male passengers. The incident was first reported to EY7 crew members, who in turn contacted authorities at Boston prior to landing. I, along with fellow FBI, MSP, and CBP personnel, then met EY7 when it landed in order to conduct an investigation. According to Etihad Airlines, KUNAPULI was assigned to seat 38A. Seat 38A is the window seat on the far left of the plane, if one is facing toward the front of the aircraft.

9.     An adult female passenger ("Passenger 1")[2] told investigators that she was assigned to and seated in seat 44G. This was the right aisle seat in the middle section of three seats. The other two seats in the section were empty. At some point during the flight, a male passenger whom Passenger 1 did not know (later identified as KUNAPULI), asked Passenger 1 if he could sit in the empty aisle seat while he waited for the restroom to become available. Passenger 1 agreed to this. Upon sitting, KUNAPULI began attempting to make small talk with Passenger 1. KUNAPULI then started complimenting Passenger 1 on her looks, telling her that she was beautiful. KUNAPULI asked Passenger 1 if she would spend the night with him in Boston, and

---

[2] Passenger 1's identity is known to me but redacted for her privacy.

offered to give her $5,000 as a gift. KUNAPULI bragged about his wealth. KUNAPULI then started to touch Passenger 1's hair and brush it with his fingers back from her face while repeating that Passenger 1 was beautiful. Passenger 1 wanted to get away from KUNAPULI. She was also having problems with her phone's in-flight Wi-Fi connection. To address that, and to get away from KUNAPULI, Passenger 1 decided to get up and go to the aft galley to look for an EY7 crew member. KUNAPULI followed Passenger 1 to the galley where he continued to get very close to her, compliment her, and touch her hair. Passenger 1 told KUNAPULI to step back and stop touching her hair on multiple occasions but he either ignored this completely or would apologize but then start his actions again.

10. Eventually a crew member ("Crew Member 1")[3] came into the galley. Crew Member 1 later told investigators that approximately four hours into the flight, he observed KUNAPULI and an adult female passenger ("Passenger 1") in the aft galley area. Initially, Crew Member 1 thought that KUNAPULI and Passenger 1 were a romantically involved couple. Crew Member 1 thought this, in part, because he saw what appeared to be KUNAPULI grabbing or touching Passenger 1's left breast. Crew Member 1 then noticed, however, that Passenger 1 backed away from KUNAPULI. Crew Member 1 also noticed that KUNAPULI was bothering Passenger 1 by taking pictures of Passenger 1 without her permission. Crew Member 1 spoke with Passenger 1 and learned that Passenger 1 did not know KUNAPULI and that he had been making unwanted sexual advances towards her. Crew Member 1 then told both KUNAPULI and Passenger 1 to go back to their respective seats, which were not together.

---

[3] Crew Member 1's identity is known to me but redacted for his privacy.

11. An adult male passenger assigned to and seated in seat 38C ("Passenger 2"),[4] the right aisle seat in the left section of Row 38, told investigators that there was a male passenger seated in seat 38A (KUNAPULI), which was a window seat. The seat between them, seat 38B, was empty. During the initial portion of the flight, Passenger 2 and KUNAPULI made small talk. Passenger 2 eventually tried to ignore KUNAPULI. At some point during the flight (believed to be approximately four hours into the flight, based on another passenger account described below), Passenger 2 looked over at KUNAPULI and observed that KUNAPULI had a blanket covering his lap and was watching something on his phone that Passenger 2 could not see. Passenger 2 observed that there was movement under KUNAPULI's blanket. Passenger 2 eventually came to suspect that KUNAPULI was masturbating under the blanket. Passenger 2 tried to ignore the situation, but eventually saw that KUNAPULI's blanket had moved and that KUNAPULI's penis was exposed and KUNAPULI was still masturbating. Passenger 2 estimated that this activity lasted for about ten minutes. After another passenger reported KUNAPULI's conduct (described further below), crew members approached Passenger 2 and spoke with him about what had occurred. Passenger 2 was then allowed to relocate to a different seat, away from KUNAPULI, for the remainder of the flight.

12. An adult male passenger ("Passenger 3")[5] assigned to and seated in seat 38D, the left aisle seat in the middle section of Row 38, across the aisle from KUNAPULI and Passenger 2, told investigators that he slept for the initial portion of the flight. About four hours into the flight, Passenger 3 woke up and took off his sleep mask. Passenger 3 observed that the male

---

[4] Passenger 2's identity is known to me but redacted for his privacy.

[5] Passenger 3's identity is known to me but redacted for his privacy.

passenger seated in seat 38A (KUNAPULI) had fully exposed his penis and was masturbating. Passenger 3 attempted to interrupt what KUNAPULI was doing by making exaggerated movements, such as shaking out his blanket, in the hopes that when KUNAPULI noticed Passenger 3 awake he would stop masturbating. KUNAPULI did eventually cover himself with a blanket but appeared to continue to masturbate under the blanket. Passenger 3 tried to ignore the situation and go back to sleep. When he could not, however, Passenger 3 looked over again at KUNAPULI and saw that the blanket which had been covering him had moved and that KUNAPULI's penis was once again exposed and he was continuing to masturbate. Passenger 3 then went to the aft galley and reported what was happening to a crew member (Crew Member 1). Passenger 3 was then allowed to relocate to a different seat, away from KUNAPULI, for the remainder of the flight. Passenger 3 provided investigators with a physical and clothing description of the individual that he had seen masturbating that was consistent with KUNAPULI's actual appearance and the clothes that he wore upon arrival at Boston, when law enforcement encountered KUNAPULI (discussed further below).

13. Crew Member 1 told investigators that the passenger from seat 38D (Passenger 3) approached him in the aft galley sometime after Crew Member 1's interaction with Passenger 1 and KUNAPULI. Passenger 3 told Crew Member 1 that the passenger in seat 38A (KUNAPULI) was masturbating. Crew Member 1 immediately went to the area where KUNAPULI was seated and saw that KUNAPULI appeared to be actively masturbating. Crew Member 1 saw that KUNAPULI's pants were unzipped and he was making a rubbing motion with his hand into his unzipped pants. Crew Member 1 told KUNAPULI to stop. This startled KUNAPULI. KUNAPULI zipped up his pants and apologized. The passenger seated in seat 38C (Passenger 2) then told Crew Member 1 that he had observed KUNAPULI masturbating.

Crew Member 1 recognized KUNAPULI as the same passenger who had been making unwanted advances on Passenger 1.

14. I, along with fellow FBI and MSP investigators, met the aircraft upon landing. Flight attendants identified KUNAPULI to law enforcement as the individual who had been seen masturbating, and law enforcement removed KUNAPULI from the aircraft. Law enforcement interviewed KUNAPULI in the CBP area at Boston Logan International Airport. This interview was recorded. After being provided with Miranda warnings, executing a written Miranda waiver, and agreeing to speak to investigators without an attorney present, KUNAPULI admitted to investigators that he did, in fact, masturbate while in his seat on EY7.

## CONCLUSION

15. Based on the foregoing, I submit that there is probable cause to believe that on October 21, 2024, Krishna KUNAPULI, being an individual on an aircraft in the special aircraft jurisdiction of the United States while onboard Etihad Airlines Flight 7 enroute from Abu Dhabi, United Arab Emirates, to Boston, Massachusetts, did violate Title 49, United States Code, Section 46506(2), application of certain criminal laws to acts on aircraft, by violating District of Columbia Code Section 22-1312, and committing lewd, indecent, or obscene acts.

_____
Jason D. Costello
Special Agent, FBI

Sworn to before me by telephone pursuant to Fed. R. Crim. P. 4.1 on this 21st day of October 2024.

5:07 p.m.

_____
Hon. David H. Hennessy
United States Magistrate Judge

7